UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
:
EMILY PIERCE,                                                    :
:
                                     Plaintiff,                 :
:
                  -v-                                            :
:
FORDHAM UNIVERSITY, INC., GRADUATE                              :
SCHOOL OF SCIENCES, et al.,                                      :
:
                                     Defendants.                :
:
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  06/01/2016

15-CV-4589 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

     Plaintiff Emily Pierce brings claims against Fordham University, Inc., Graduate School of Social Services ("Fordham" or "Fordham University"); the United States Department of Education Office of Civil Rights ("OCR"); and several people affiliated with one or the other of those entities —  from Fordham, President Joseph McShane, Dean Debra M. McFee, Dean Susan Egan, and Dean Keith Eldredge (the "Fordham Individual Defendants" and, together with Fordham University, the "Fordham Defendants"); and from OCR, Acting Director Rachel Pomerantz and the Director of the New York Enforcement Office, Ronald M. Scott (together with OCR, the "Government Defendants").  Plaintiff alleges that the Fordham Defendants discriminated against her based on her mental disability and retaliated against her for lodging complaints with respect to that discriminatory treatment; with respect to the Government Defendants, she seeks to compel action on a related complaint that she filed with OCR.  All Defendants move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint ("SAC" or "Complaint").  (Docket Nos. 34, 39).  For the reasons that follow, the motions are granted, and the Complaint is dismissed in its entirety.

## BACKGROUND

The following facts — which are taken from the SAC, documents it incorporates, and matters of which the Court may take judicial notice — are construed in the light most favorable to Plaintiffs. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

In the Spring of 2011, Plaintiff enrolled in Fordham's Masters of Social Work Graduate of Social Services Program ("MSW Program"). (Second Am. Compl. ¶ 16). The following Spring, Plaintiff took a leave of absence due to a medical condition (the "2012 Absence"), and returned to the MSW Program in the Fall of 2012. (*Id.* ¶¶ 18-19). Upon her return, Plaintiff requested additional loans to cover her medical expenses; according to the Complaint, Fordham's financial aid office demanded that Plaintiff turn over her medical records in order to apply for such financial aid. (*Id.* ¶¶ 19-20). It is unclear whether Plaintiff complied but, in any event, she told the financial aid office that she felt being required to do so violated her rights under the Americans with Disabilities Act ("ADA"). (*Id.* ¶ 20). Plaintiff then "*drafted* a formal *pro se* [c]omplaint" addressed to the Civil Rights Division of the U.S. Department of Justice ("DOJ"), to the same effect. (*Id.* ¶ 21 (emphasis added)). There is no allegation, however, that she *filed* any complaint at that time — and Plaintiff makes clear in her memorandum of law that she did not. (*See* Mem. Law Opp'n Fordham Defs.' & Government Defs.' Mot. To Dismiss (Docket No. 44) ("Pl.'s Opp'n") 20 ("[I]n June 2013, Plaintiff lodged her formal complaint."); *id.* at 21 ("Plaintiff lodged her original complaint . . . in June 2013."); *see also* Mem. Law Supp. Defs.' Mot. To Dismiss Pl.'s Second Am. Compl. (Docket No. 35) ("Fordham Defs.' Mem.") 21

("[T]here is no allegation that upon drafting a *pro se* Complaint, she actually filed that Complaint with the Department of Justice or made Fordham aware that she had.")).).

The following year, from February 21, 2013, to March 13, 2013, Plaintiff "suffered complications that necessitated a psychiatric hospitalization." (SAC ¶ 22). As a result, on March 13, 2013, she took a second medical leave of absence from the MSW Program (the "2013 Absence"). (*Id.* ¶ 23). In April 2013, Plaintiff "repeatedly and continuously" attempted to secure re-entry into the MSW Program. (*Id.* ¶ 24). According to the SAC, she provided documentation from her treating psychiatrist stating that she was ready, willing, and able to re-enter the program; was willing to be examined by one of Fordham's psychologists if her attorney could be present; and was prepared to have her treating psychiatrist fill out an "overboard 2013 Community Provider Form." (*Id.* ¶ 26). Plaintiff alleges that the Fordham Defendants not only refused to accept those things, but also "became irate and unreasonable seeking more and more overbroad and excessive documentation from Plaintiff." (*Id.*). Emails attached to the Complaint, however, make plain that from the very beginning Plaintiff opted not to comply with Fordham's "reentry process" for students seeking to return from mental health leaves of absence by refusing to provide the required forms. (*Id.*, Ex. 6, at 1 (email from Plaintiff to Dean Eldredge stating "I will not be supplying Fordham with the forms")).[1]

---

[1]     It is well established that, where a plaintiff's "own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-CV-1777 (ADS) (AKT), 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011); s*ee, e.g.*, *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (upholding dismissal where "attenuated allegations" supporting the claim were "contradicted both by more specific allegations in the Complaint and by facts of which [the court] may take judicial notice"); *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (per curiam) (affirming the dismissal of a claim based on "wholly conclusory and inconsistent allegations").

With respect to the Government Defendants, Plaintiff's claim focuses on the alleged delay in their acting on the complaint that she appears to have filed in June 2013 with DOJ — a complaint that was subsequently transferred to OCR.  (*Id.* ¶ 29; *see id.*, Ex. 4, at 1 (letter from DOJ stating that "[i]n June 2013, we referred a complaint against Fordham University, which we received directly from Ms. Pierce, to the U.S. Department of Education"); *see also* Pl.'s Opp'n 20-21).  On June 26, 2013 and July 1, 2013, OCR's New York Enforcement Office contacted Plaintiff to investigate her claim, and she and her attorney provided further information.  (*Id.* ¶ 29; *id.*, Ex. 3, at 1).  In a July 11, 2013 letter, OCR informed Plaintiff of its determination that two of her allegations were appropriate for investigation, but one was not.  (SAC ¶ 46; *see id.*, Ex. 3).  Pursuant to its Early Complaint Resolution Program, OCR held a mediation between Plaintiff and Fordham in August 2013, which was unsuccessful.  (*Id.* ¶ 47).  With respect to OCR's investigation, Plaintiff alleges in her Complaint that OCR "stated that it should have a determination as an earmarked internal deadline in December 2013," but "has to date refused to complete its investigation and/or share the results of that investigation and determination with Plaintiff," despite repeated inquiries from Plaintiff and her counsel (and, apparently, from a Congressman inquiring on Plaintiff's behalf).  (*Id.* ¶¶ 48, 50-54).

On June 12, 2015, Plaintiff filed this lawsuit.  (Docket No. 1).  Her claims are somewhat hard to pin down because her pleadings are confusing and, at times, contradictory.  But the essence of her claims is that (1) the Fordham Defendants intentionally discriminated against her and retaliated against her in connection with her attempts to reenter the MSW Program after her 2013 Absence, in violation of the ADA, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*; and (2) the Government Defendants abdicated their duties, in violation of some combination of the ADA, the Rehabilitation Act, and the Administrative

Procedure Act, 5 U.S.C. § 701 *et seq.*  (SAC ¶¶ 3, 5).  Both sets of Defendants moved to dismiss

the Complaint and by January 18, 2016, both motions were fully briefed.  (*See* Docket Nos. 45,

47).  On March 24, 2015, the Government filed a letter indicating that, on March 3, 2016, OCR

had issued a determination with respect to Plaintiff's administrative complaint and asked the

Court to dismiss all claims against the Government Defendants as moot.  (Docket No. 48).  On

March 28, 2016, Plaintiff filed a letter in response.  (Docket No. 50).

## CLAIMS AGAINST THE GOVERNMENT DEFENDANTS

The Court begins with Plaintiff's claims against the Government Defendants.  Although

the allegations in the Complaint are somewhat rambling and disjointed, Plaintiff made plain in

her opposition brief that she "amend[ed] her complaint to seek only injunctive relief from the

Government Defendants" — namely, "answers and a completion of her investigation, which is

over two and a half years old."  (Pl.'s Opp'n 14).  As the Government's letter of March 24, 2016,

advised the Court, OCR provided Plaintiff with what she was seeking on March 3, 2016.

(Docket No. 48).  It follows that Plaintiff's claims against the Government Defendants are moot

and must be dismissed.  *See, e.g.*, *Kim v. Aguirre*, No. 03-CV-6494 (RJH) (KNF), 2004 WL

1773432, at *1 (S.D.N.Y. July 1, 2004) (dismissing the plaintiffs' complaint where they had

received the relief they sought after the filing of the lawsuit); *see also, e.g.*, *Boucher v. Syracuse

Univ.*, 164 F.3d 113, 117-18 (2d Cir. 1999) (holding that  female students' claims were moot

because the university they were suing had already established a women's lacrosse team, which

was the relief the students had originally sought).

Plaintiff does not dispute that the sole relief her Complaint sought from the Government

Defendants was a determination of her administrative complaint and that OCR issued such a

determination on March 3, 2016.  (*See* Pl.'s Ltr. Of March 26, 2016 (Docket No. 50)).

Strangely, however, she does not concede that her claims against the Government Defendants are moot; instead, she contends that the Government Defendants issued "an unfavorable and untimely determination" as retaliation for this lawsuit and that OCR "should be compelled to produce the corroboration and supporting documentation from its investigation" because "[w]ithout proper discovery, it [sic] renders this determination as [sic] arbitrary and capricious." (*Id.* at 2). Such claims, however, do not appear in the Complaint. *See, e.g.*, *Disabled in Action of Metro. N.Y. v. Trump Intern. Hotel & Tower*, 2003 WL 1751785, at *13 (S.D.N.Y. Apr. 2, 2003) ("A claim for relief may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks omitted)). Further, the Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," let alone for a plaintiff whose claims are moot. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In any event, to the extent Plaintiff takes issue with OCR's apparent determination not to pursue an enforcement action, and suggests possible relief under the APA, it is meritless; such a decision by OCR is committed to agency discretion by law and not subject to judicial review under the APA. *See Heckler v. Chaney*, 470 U.S. 821, 832-33 (1985). Lastly, Plaintiff's closing request that the Government Defendants be sanctioned for providing the relief sought in her lawsuit is frivolous. If anything, it is Plaintiff's letter that comes close to warranting Rule 11 sanctions.

## CLAIMS AGAINST THE FORDHAM DEFENDANTS

The Court turns, then, to the Fordham Defendant's motion to dismiss, which is brought pursuant to Rule 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *See Iqbal*, 556 U.S. at 679. When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as

true and draw all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  To survive such a motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.

The inquiry here is made more difficult by the fact that Plaintiff's papers are somewhat incoherent, frequently contradictory, and at least partially frivolous.  For example, Plaintiff's Complaint indicates that her claims against the Fordham Defendants are brought pursuant to, among other statutes, Title VI of the Civil Rights Act (*see* SAC 9, 12), but in her opposition brief, Plaintiff states that she is not pursuing any Title VI claim.  (Pl.'s Opp'n 22-23).  (That concession is well founded, as Title VI provides that "[n]o person in the United States shall, *on the ground of race, color, or national origin*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 42 U.S.C. § 2000d (emphasis added), and Plaintiff does not allege discrimination based on her race, color, or national origin.)  Additionally, Plaintiff repeatedly alleges that the Fordham Defendants' actions violated the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d *et seq.*, but she does not appear to bring an actual cause of action for such a violation in her Complaint.  (*See* SAC ¶¶ 19, 21, 44; *see also*

Pl.'s Opp'n 19 (claiming that Fordham's actions were "in violation of HIPPA [sic] confidentiality laws")).  (Again, that is well founded, as HIPAA does not create a private right of action.  *See, e.g.*, *Jackson v. Ramirez*, No. 15-CV-0617 (GHW), 2016 WL 796854, at *10 (S.D.N.Y. Feb. 22, 2016).)[2]  And while Plaintiff appears to bring claims against the Fordham Defendants under both Title II and Title III of the ADA (*see* SAC ¶¶ 11, 33), it is plain that Title II does not apply because that title is limited to "public entities" and none of the Fordham Defendants qualifies as such an entity.  *See* 42 U.S.C.A. § 12131.

Thus, the Court construes Plaintiff's SAC to raise against the Fordham Defendants only claims under Title III of the ADA and the Rehabilitation Act.  (SAC ¶¶ 11, 33).  Title III of the ADA provides in relevant part that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates" the public accommodation.  42 U.S.C. § 12182.  Similarly, Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.[3]  Because "the standards adopted by Title[] . . . III of the ADA are, in most cases, the same as those required under the Rehabilitation Act,"

---

[2]     DOJ referred Plaintiff's "complaint pertaining to HIPAA violations to the Department of Health and Human Services (HHS) because the Centers for Medicare and Medicaid Services, under HHS, administers and enforces the rules pertaining to HIPAA."  (SAC, Ex. 4, at 2-3).

[3]     Both Title III of the ADA and the Rehabilitation Act apply to Fordham as an educational institution that receives federal funding.  (*See* SAC, Ex. 3, at 2; Fordham Defs.' Mem. 20-21 (implicitly conceding receipt of federal funding).  *See* 42 U.S.C. § 12181(7)(J) (defining "public accommodation" to include, among other things, a "postgraduate private school").

courts typically "consider the merits of these claims together."  *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004), *opinion corrected by* 511 F.3d 238 (2d Cir. 2004); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) ("[U]nless one of th[e] subtle distinctions is pertinent to a particular case, we treat claims under the two statutes identically."). Accordingly, the Court will analyze the claims under the two Acts together.  *See, e.g.*, *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) (analyzing together claims under both Acts against a private postgraduate school).  The Court begins with Plaintiff's discrimination claim and then turns to her retaliation claim.

## A.  Disparate Treatment

To state a claim of discrimination under the ADA or the Rehabilitation Act, a plaintiff must allege "(1) that she is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability."  *Powell*, 364 F.3d at 85 (internal quotation marks and alterations omitted); *accord Shomo v. City of N.Y.*, 579 F.3d 176, 185 (2d Cir. 2009).  With respect to the third element, "a plaintiff can base a disability discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'"  *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011) (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)); *see also Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) (agreeing with the district court that if a plaintiff proves failure to accommodate she "need not also prove that discrimination was intended," and noting that the ADA was not "intended to allow recovery *only* for intentional discrimination" (emphasis added)).  Where, as here, a plaintiff bases her claim on

9

a theory of intentional discrimination, she may raise an inference of discrimination by alleging that the defendants treated her "less favorably than a similarly situated" student "outside h[er] protected group." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted).

Applying those standards here, Plaintiff fails to state a claim for intentional discrimination. In particular, the facts Plaintiff alleges do not give rise to any inference "that defendants harbored some discriminatory animus against [her] disabilit[y]." *Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 18 (2d Cir. 2015) (summary order). Nor do they provide any indication that Plaintiff was singled out. To the contrary, the Complaint itself suggests that *any* student who, like Plaintiff, took a leave of absence for mental health problems was required to complete the reentry process and that Plaintiff was denied readmission because she refused to comply with that process. (*See* SAC, Ex. 2, at 2 (letter from OCR to Fordham stating that, "[w]ith respect to students returning from a medical withdrawal related to mental health concerns, University staff acknowledged that its practice is to require all such students to satisfy" the reentry procedures of which Plaintiff complains); *id.*, Ex. 6, at 2 (email from Plaintiff stating "I will not be supplying Fordham with the forms")). Notably, Plaintiff herself concedes that Fordham had a justification for its reentry procedure having nothing to do with animus towards the mentally disabled. As Plaintiff herself puts it, "given the world as it is today relating to terrorism, mentally ill [sic], and gun control, *it is understandable* that a university would be engaged in the practice of insuring that a student — who was suffering from a mental disability as well as a recent psychiatric admission — is not a danger to herself or others." (Pl.'s Opp'n 19 (emphasis added)). It follows that the Fordham Defendants' denial of readmission to Plaintiff when she refused to complete the reentry procedure was, to use Plaintiff's own phrase,

"understandable."  *Cf. Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (holding that where "the complaint itself reveals that the actions taken by" the defendant, an employer, "were job related," the plaintiff "has failed to allege facts that would support an inference of discrimination"); *Silk v. City of Chi.*, 194 F.3d 788, 800 (7th Cir. 1999) (holding that a police department's prohibiting an officer from holding a second job was not evidence of ADA discrimination or retaliation when "department rules prohibit *all* officers" from doing so and there was no "evidence that the policy was applied inconsistently"); *Shurb v. Univ. of Tex. Health Sci. Ctr. at Houston-Sch. of Med.*, 63 F. Supp. 3d 700, 708 (granting summary judgment, in favor of a university that denied the plaintiff-student reentry, based on "the plaintiff's *own* admissions regarding his lack of cooperation and failure to provide a certification of fitness from his treating psychiatrist").

Plaintiff's counterarguments are without merit.  First, although Plaintiff repeatedly alleges in summary fashion that she was "treated . . . differently than other students similarly situated" (SAC ¶¶ 24, 43), it is well established that "conclusory allegations devoid of any factual matter" are insufficient to state a claim for relief.  *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 608 (E.D.N.Y. 2013); *see Kajoshaj v. N.Y.C. Dep't of Ed.*, 543 F. App'x 11, 14 (2d Cir. 2013) (applying Title VI and holding that the plaintiffs' "'naked allegation' that they were treated differently from non-Muslim, non-Albanians cannot demonstrate a plausible entitlement to . . . relief" (citing *Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir. 1988)).  Second, while the Complaint includes allegations concerning the experiences of two other students — identified as "Student #1" and "Student #2" — those allegations do nothing to advance Plaintiff's cause.  (SAC ¶ 43).  For one thing, it is not even apparent that the two students were treated in a meaningfully different manner than Plaintiff.  (*See id.* (alleging Student #1 had to go

through the reentry process); *id.* (alleging only that Student #2 was schizophrenic and "had to take multiple leaves of absence")).   Additionally, even assuming they were treated differently (that is, more favorably) than Plaintiff, that would not help her show that she was treated less favorably *based on* her disability; instead, it would indicate just the opposite, as the "preferred" students are alleged to have had the same sort of disability that Plaintiff has.   *Cf. Doe v. Pfrommer*, 148 F.3d 73, 83 (2d Cir. 1998) ("[T]he central purpose of the ADA and § 504 of the Rehabilitation Act is to assure that disabled individuals receive 'evenhanded treatment' *in relation to the able-bodied.*" (emphasis added)).   Finally, although Plaintiff makes allegations with respect to her first leave of absence (in 2012) and the related loan dispute, Plaintiff herself attested to the irrelevance of those allegations by asserting that the earlier incident was "*not related to the re-entry process called into question here* for a psychiatric hospitalization."  (SAC ¶ 18 (emphasis added)).   Accordingly, the Fordham Defendants' motion must be and is granted with respect to Plaintiff's discrimination claims.[4]

## B.  Retaliation

The Court turns then to Plaintiff's retaliation claims.  Plaintiff asserts that "the Fordham administration retaliated against her for the first complaint to OCR as well as her interaction and verbal communications with the Fordham financial aid office as a result of her first medical leave of absence and the events that followed from that re-entry and a subsequent request for

---

[4]      In the Complaint, Plaintiff also appears to base her claims against the Fordham Defendants on a 2011 resolution agreement between Fordham and OCR regarding a student's complaints about Fordham's policies governing student reentry after a medical leave of absence. (SAC ¶¶ 55-60; *see id.*, Ex. 2).  But that 2011 resolution agreement cannot form an independent basis for any of Plaintiff's claims.  Among other things, the agreement itself states that, as a "letter of finding," it (1) "contain[s] fact-specific investigative findings," (2) "is intended to address [only] this individual OCR case," and (3) "should not be relied upon, cited, or construed as" a formal statement of OCR policy.  (SAC, Ex. 2, at 5).

additional financial aid due to medical and school financial obligations." (SAC ¶ 24).[5]  To state a

claim of retaliation under either the ADA or the Rehabilitation Act, however, a plaintiff must

allege that (1) she was engaged in protected activity; (2) the alleged retaliator knew that she was

engaged in protected activity; (3) an adverse decision or course of action was taken against her;

and (4) a causal connection exists between the protected activity and the adverse action.  *Weixel*

*v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148-49 (2d Cir. 2002); *see also* 42 U.S.C. § 12203

(ADA); 29 C.F.R. § 1614.101(b) (Rehabilitation Act).  Measured against these standards,

Plaintiff's claims fall short.

Plaintiff's first contention — that the Fordham Defendants retaliated against her for filing

the OCR complaint — does not withstand scrutiny for the simple reason that she filed that

complaint *after* the Fordham Defendants denied her reentry in the spring of 2013; indeed, the

complaint expressly alleged that Fordham had discriminated against Plaintiff "by conditioning

[her] readmission to the [MSW Program] following a medical leave of absence, upon [her]

consent to release" her medical records.  (SAC, Ex. 3; *see also* Pl.'s Opp'n 21 ("Plaintiff lodged

her original complaint . . . in June 2013.")).  Thus, although the OCR complaint undoubtedly

qualifies as "protected activity," Plaintiff "cannot establish that [her] protected activity caused"

the allegedly adverse actions against her.  *Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F.

Supp. 3d 338, 346 (S.D.N.Y. 2014).  Second, although Plaintiff contends that she informally

complained to the Fordham financial aid office (SAC ¶ 24), she alleges no facts to suggest that

those complaints were shared with anyone at Fordham involved in taking (or deciding to take)

---

[5]     The Complaint includes other (rather repetitive) allegations regarding retaliation (*see*
SAC ¶¶ 3, 27, 32, 34, 36, 37, 39, 42, 43, 46, 59, 61), but they are either conclusory or irrelevant
as a matter of law.  For example, Plaintiff appears to suggest that Fordham retaliated against her
for the psychiatric hospitalization itself.  (*Id.* ¶¶ 38, 46).  But being institutionalized does not
qualify as "protected activity" for purposes of a retaliation claim under the Acts here.

the allegedly adverse actions against her.  Conclusory allegations aside (*see, e.g.*, *id.* ¶ 39), the only suggestion in the Complaint that anyone involved in the reentry process was aware of Plaintiff's complaints to the financial aid office is an email she attaches from December 2012 in which she asked Dean Heyman to "please speak to Mr. Cirillo in the financial Aid Office because I believe there is a *HIPPA* [sic] issue here when the school is asking for medical information that is private and not required."  (SAC, Ex. 6, at 10 (emphasis added)).  But that complaint (if it can be called a complaint) pertained to HIPAA, not the ADA or the Rehabilitation Act, and thus cannot, as a matter of law, give rise to a claim of retaliation under either of the Acts involved here.  *See, e.g.*, 42 U.S.C. § 12203 (protecting opposition to "any act or practice made unlawful *by this chapter*" (emphasis added)); *Hong Yin v. N. Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 375 (E.D.N.Y. 2014); *cf. Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012) ("[I]nformal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited *by Title VII*." (emphasis added)).

In her opposition, Plaintiff suggests for the first time that the Fordham Defendants' supposed refusal "to compromise, negotiate, and discuss any resolution" of her OCR complaint is an alternative basis for her retaliation claim (Pl.'s Opp'n 20), but that suggestion borders on frivolous.  For one thing, a plaintiff may not amend her complaint through her opposition to a motion to dismiss.  *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).  Additionally, Plaintiff herself immediately undermines the argument's factual premise by noting that the Fordham Defendants "attended an early mediation session with" her and her attorney in August 2013.  (Pl.'s Opp'n 21).  And finally, even if the Fordham Defendants did refuse to discuss a resolution (and there were any evidence that such refusal was in retaliation for engaging in protected activity, a rather dubious proposition), such unwillingness is not an

adverse action that can form the basis of a retaliation claim.  *See, e.g.*, *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 589 (11th Cir. 2000) (observing that "[a]ny action or inaction in regard to settlement of a claim cannot be retaliation for making the claim in any meaningful sense"), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  Accordingly, Plaintiff's retaliation claims fail, and the Fordham Defendants' motion to dismiss is granted in full.[6]

## LEAVE TO AMEND THE COMPLAINT

In the final pages of her opposition, Plaintiff asks for leave to amend her complaint for a third time in the event that the Court grants any part of the Defendants' motions to dismiss. (Pl.'s Opp'n 33-34).  Under Rule 15 of the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has held that a Rule 15(a) motion — as the Court construes Plaintiff's request — "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (internal quotation marks omitted); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("leav[ing] unaltered" prior case law on denial of leave to amend, including the rule that "leave

---

[6]     In light of the fact that Plaintiff fails to state a valid claim against the Fordham Defendants, the Court need not — and does not — reach their separate arguments for dismissal of all claims against the Fordham Individual Defendants and all claims for monetary damages. (Fordham Defs.' Mem. 15, 19-20; Reply Mem. Law Further Supp. Defs.' Mot. To Dismiss (Docket No. 47) 2).  Those arguments, however, appear to be well founded.  *See, e.g.*, *Nelson v. City of New York*, No. 11-CV-2732 (JPO), 2013 WL 4437224, at *14 (S.D.N.Y. Aug. 19, 2013) (noting that "[i]t is well established that there is no individual liability under the ADA or the Rehabilitation Act" in the circumstances presented here); *Krist*, 688 F.3d at 94 ("Title III . . . authorizes private actions only for injunctive relief, not monetary damages.").

may be denied where amendment would be futile").  At the same time, "the grant or denial of an

opportunity to amend is within the discretion of the District Court."  *Williams v. Citigroup Inc.*,

659 F.3d 208, 214 (2d Cir. 2011) (internal quotation marks omitted).

Applying those principles here, the Court concludes that leave to amend is not warranted

because further amendment would be futile.  First, "better pleading will not cure" the mootness

of Plaintiff's claims against the Government Defendants.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112

(2d Cir. 2000).  Second, Plaintiff cannot in good faith plead her way to a revival of the claims

against the Fordham Defendants; if Plaintiff had better facts to allege, it is safe to assume that

she would have alleged them.  That is, Plaintiff fails to give "any indication that [she] is in

possession of facts that would cure the problems identified in this opinion."  *Clark v. Kitt*, No.

12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014).  And, as Plaintiff's

claims failed in no small part due to the documentary evidence that she herself attached to her

Complaint, it is more than safe to assume that such facts do not exist.  Notably, although

Plaintiff's SAC more than doubled in length (exclusive of attachments) from the Amended

Complaint, in substance it added only a handful of new, and irrelevant, allegations (regarding

"Student #1" and "Student #2" and a 2011 resolution agreement (*see supra* note 4)), as well as

equally irrelevant causes of action (such as a since-abandoned Title VI claim); otherwise, the

Complaint's additional length came from largely repetitive (and increasingly disjointed)

allegations.  Finally, the fact that Plaintiff already amended her complaint once in response to the

deficiencies raised in the Fordham Defendants' initial motion to dismiss — a motion that,

notably, raised many of the same arguments as the motion addressed in this Opinion and Order

(*see* Docket No. 27) — and that she was expressly cautioned that she would "not be given any

further opportunity to amend the complaint to address issues raised by" the earlier motion

(Docket No. 28), underscores the futility of further amendment.  *See, e.g.*, *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (affirming the district court's denial of leave to amend in part because of the previous opportunities that the plaintiff had received to amend the complaint).  Plaintiff's request for leave to amend once again is therefore denied.

## CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss are granted.  More specifically, all claims against the Government Defendants are dismissed as moot, and all claims against the Fordham Defendants are dismissed for failure to state a claim.  The Clerk of Court is directed to terminate Docket Nos. 34 and 39, and to close this case.

SO ORDERED.

Date:   June 1, 2016
        New York, New York

_____
JESSE M. FURMAN
United States District Judge